We'll now move on to the next case on the calendar that's United States v. DiNapoli. Let me make sure counsel is available. Mr. Adler are you there for the appellant? Roger Bennett Adler here before the court your honor. Okay and you can see and hear everybody all right? Yes sir I can. Good all right and then for the government? Mr. Scotton you're there? I am your honor and I can see and hear the court. Good all right so Mr. Adler you've got ten minutes but you've reserved two minutes for rebuttal so that gives you eight out of a gate the floor is yours. Thank you your honor may it please the court the appellant Joseph DiNapoli respectfully appeals from a plea-based judgment of December 20th 2019. I'm going to divide the argument most respectfully into two direct components mindful that from the standpoint of defense counsel this case represents the intersection of geriatrics with criminal justice all which arise during the COVID-19 pandemic and are based upon the application of the so-called parsimony clause of 18 U.S. I'm sorry to interrupt but is this the the case in which you invoke the Rachmaninoff doctrine? I invoke Rachmaninoff the law and the facts yes sir. I think you also invoked the movie Goldfinger and I guess I think I think it is a universal recognition and what I think most respectfully to try to anticipate where the panel is going and at the same time to be appropriate on behalf of my client let me say this under the written plea agreement that this case was resolved under the defendant faced a sentencing range that was viewed to be appropriate by the parties again agreeably not 46 months and as the pre-sentence report documented and as was demonstrated at the time the sentencing this wasn't merely and forgive me I'm not trying to be light about this an old guy with health issues as you can tell from the pre-sentence report he was from a medical standpoint before COVID-19 a the time since he surrendered in consistency with judge Seibel surrender order he's gotten no CAT scans he's gotten no treatment for diabetes he's been in a horrible situation so what I asked for it to do not merely on the basis of perceived Rachmaninoff but on the basis of 3553 a which I view to be the government's articulation of that in a non-Yiddish way to be a basis of saying one the court did not focus on the court did not consider the court did not give appropriate consideration to these medical issues including what is really extraordinary six medical procedures at NYU Langone within two years of the sentencing and so I say that the court didn't consider that I mean seems to me judge said I had all of this in front of her she wasn't a blue light she just concluded that the other 3553 a factors required more of a sentence that somebody who's committing crimes in the 70s after a career of committing crimes can't honestly think that they get a freebie because they're judge Sullivan most respectfully the judge did judge Seibel recognized it in in in a significant way when she said I recognize that he meaning the appellant would not receive the same medical care that he would receive on the outside in this case on the Medicare and so my point is that there was a recognition that there was a cognizable fall-off a cognizable deficiency before any of us knew what the COVID-19 would do and I'm saying that ignoring that disparity and the consequences of a Bureau of Prisons policy that demonstrated it was unwilling or unable to provide those services implicates Eighth Amendment concerns so my point is that she disregarded it and the other thing she disregarded not that she waited contrary to my evaluation but that she disregarded it was the fact that she gave no credit for the year and a half which the defendant had spent without incident on home confinement and that's discussed at page 23 of the sentencing transcript supplemental appendix page 23 so the fact that the court gave no consideration to the time spent safely and without incident on home confinement for over 18 months strikes me as an abuse of discretion under 3553 a my last argument is if there's a requirement that you get credit for home confinement no there's only a requirement that it be considered I fully concede judge Sullivan that the court had the right to reject it and give it no basis at all but what I am saying is it was a valid consideration under 3553 a if the judge on reconsideration said I didn't want to give a credit for and I'm giving him no credit now I concede to you sir I I have nothing to say about it but my point is it wasn't addressed it wasn't considered it wasn't evaluated and it was argued it was argued it was argued if it was not digress but move on briefly to the issue of the fine and I would simply say as a tagline to that appellant respectfully contends that point two of the appellant's brief should be treated in the following way there were procedural and substantive errors in the computation of the fine and this case is remanded consistent with and pursuant to United States versus Fox and in the FAF case a panel of this court consisting of judge Jacob and your late colleagues judges Ralph winter and Joseph McLaughlin found the judge Kaplan in imposing a fine on a co-defendant Larson committed plain error in in in computating the fine in this particular case the fine of two hundred and fifty thousand dollars was a hundred thousand dollars more than recommended by the agreement and it was unsupported by the record there is no basis and I would urge the court the panel to ask government counsel how it justifies a fine of this kind were the court to ask me Mr. Adler if we reduced it to one hundred and fifty thousand dollars would you be quiet and go away and the answer is yes but my prayer for relief would be a remand citing United States versus FAF a peculiar opinion of this court as the basis of the mandated result didn't the district judge find that he was had had substantial resources millions of dollars and doesn't a fine have to bear some relationship to the person's wealth if it's going to be punitive if it's if it's reduced to two small amount it serves no purpose well certainly the hundred and fifty thousand dollars that was recommended by the probation department was no small amount but Judge Walker I do recognize and I do not dispute that there were facts in the record in the pre-sentence report that would support the defendant's ability to pay so I don't want the panel to think that that is a contention that somehow defendant is so to speak crying poverty in this regard the issue is the legal one the issue is under FAF the issue is is there a nexus between the crime of conviction and the fine that was imposed the failure to apply sentencing guideline 5E1.2 and to comply with the United States versus FAF are where the defense and where appellant stands before the panel of the court for that reason I asked the court respectfully to vacate the conviction and remand for resentencing but I fully concede the court's power to reduce the fine to a hundred and fifty thousand if it doesn't I would respectfully ask that it consistent with FAF remand the case for reconsideration because it was an upward departure and it's unsupported by the facts in the record indicating how it was computed what it was based upon the very facts that prompted the panel in FAF. Thank you very much I'm sorry go ahead. That's okay let me just ask a question I mean it seems clear to me that the variance it seemed to be a variance not a departure although Judge Seibel used the word departure it seemed to me that the variance going up for the fine basically compensated for the variance going down on the sentence in other words Judge Seibel imposed a below guidelines sentence of 52 months and an above guidelines fine in light of some of the factors that you're really talking about here his health his age isn't that a reasonable balancing? Well the guidelines require a process and there was procedural error in not following the guidelines and there was procedural error in not giving the defendant adequate and prior notice that to imposing an above the guidelines fine and so all I'm asking is rather than I'm sorry Mr. Bradley it's tricky on Zoom it's hard to talk over each other and sometimes I jump in but the government certainly argued for a fine of more than $150,000 right? They did but my point is that there was a procedural requirement that if the court was going to consider an enhanced fine and it had to go through the process that the guidelines set forth she didn't and all I'm all I'm saying to the panel is that I believe respect for process counts and particularly here where there is a material deviation between the fine that was recommended the fine that was imposed and the fact that no testimony was taken there are no facts in the record that the record is silent it invites speculation all I'm asking the panel to do is follow FOF, remand the case for further proceedings consistent with FOF regardless of how they come out I would then be satisfied most respectfully. Thank you Mr. Adler you reserved a couple minutes for rebuttal we'll now hear from Mr. Scotton. Thank you your honor and may it please the court my name is Hagan Scotton I'm an assistant United States Attorney in the Southern District of New York I represent the government in this appeal with my colleagues Jacqueline Kelly and Scott Hartman I represented the government in the district court I do want to start with the fine because there is a factual error in our brief that I want to apologize for in footnote 7 which is on page 22 we stated that we had sought an above-guidelines sentence from in terms of the fine from the court looking back in preparing for this argument we sought a fine of two under the guidelines as the government was urging they be calculated was actually at the top of the guidelines but not above guidelines so we don't rely on that for having provided sufficient notice for a departure that does not change the primary argument in our brief which is the one Judge Sullivan pointed out here that no notice was required because what happened here was quite clearly a variance and not a departure and that I think resolves appellants procedural concerns this court has been clear in the fact the Supreme Court has been clear since Irizarry that there is no notice requirement for a variance and there is no additional guidelines procedure beyond that which the district court used here which is to say she properly calculated the guidelines there's no dispute in this appeal that the district court did so she recognized that the fine she was imposing was above the guidelines and then provided the reasons for doing so in this case including the seriousness of the offense the amount of gain to the defendant the considerable duration of his criminal career and the profits he made from it and therefore she weighed all the factors and also noted that in this case punishment alone would justify the $250,000 fine given the severity of the defendant's conduct and the fact that this was less than 10% of his undisputed assets subject to the court's questions on that I'll briefly discuss the sentence of incarceration with respect to the sentence of incarceration it was procedurally and substantively appropriate as the court noted that the district court weighed the factors and concluded balancing really essentially almost all the 3553 factors that this was the appropriate sentence it is not accurate to suggest that the parties in any way agreed to a sentence within the guidelines stipulated in the plea agreement the plea agreement is quite clear that it's stipulated only as to guidelines calculation not the appropriate sentence either in terms of the party's arguments or what the district court would ultimately impose and in fact mr. DiNapoli himself did not come and say judge give me a guideline sentence he sought a sentence of no time served which would have been in a very large variance below the stipulated guidelines range because mr. DiNapoli like every other party on the court in this case understood that the plea agreement in no way bound the parties as to what the appropriate sentence would be so I have a question there were there were two guidelines calculations in this case correct I mean it started off with a with a lower one in that put in the plea agreement and then the judge the judge bumped it up to 70 to 87 that's correct I guess at the recommendation of the probation office that's correct okay and I see so you didn't have the benefit of the probation office's thinking at the time that you reach the plea agreement that's correct your honor in this case the parties reached a plea agreement and the divergence between the plea agreement and the calculation arrived out by the probation office and then arrived at by the district court was the treatment of some of DiNapoli's prior criminal history I won't get into the sort of guidelines issues here since it's not a disputed point on some people but it essentially was whether certain of his prior convictions should be treated as in application note 4 of section 2e 1.1 of the guidelines the probation department reached a different conclusion the district judge agreed with probation department neither party disputed that the probation office calculations were correct and I don't understand mr. Adler to be disputing their correctness on this appeal okay so what was the reason then for the conclusion why why why the mistake in the plea so it's obviously your honor because it's never been disputed there isn't a clear record as to the party's plea agreement the most I can tell the court is this and pardon me if it sort of belabors the guidelines issues but mr. DiNapoli has a great many prior felony convictions and as I'm sure the court is aware oftentimes some criminal history convictions do not count towards criminal history because they are deemed relevant conduct within section 4a 2 of the guidelines but then in a to that exception wherein prior convictions that would be relevant conduct nonetheless count towards criminal history because they establish the pattern of racketeering activity at issue in this case and so they will be counted against the defendant for criminal history that sort of makes sense if you think about that people who fly this trade in this area would know the guidelines and know how to calculate criminal history you know it creates a when the criminal history gets screwed up and then later everybody agrees oh yeah I guess we got it wrong but the expectations in the plea agreement you know are premised on a different guidelines would be better to get it right the first time so it's let's start getting it right the first I certainly agree with that your honor and subject to any other questions in the court I'll rest on the briefs okay all right mr. Adler you've got two minutes of thank you your honor briefly and to the point if there were only a single page in the trial record that I would ask the panel to look at before adjudicating this case insofar as issue to dealing with the fine is concerned I would urge the court to look at supplemental appendix page 35 which is page 35 of the the defendant notes a number of other fines and financial penalties which were previously paid in cases that were overlapping factually and legally with this case I call that to the court's attention to the panel's attention for the limited purpose of indicating that while there is an understandable attraction to the notion that on the on the front end jail time was knocked down and on the back end money was added up it's a little bit more complex than that and and the overarching perception is that the court did not give consideration to whether he'd been aptly was in effect being fined twice for the same conduct so the right way I'm looking at that same page and judge Seibel expressly addressed and made it clear that she was not persuaded by mr. Richmond's argument because she said that he was getting additional payments in the interval after them he was getting his Christmas envelopes that he was amassing assets through criminal activity independent of what he was fined on in the state isn't that what she found that there's a difference between sources of income and fines which have already been paid meaning that you're being prosecuted twice for the same offense my point simply is this is a reason for procedural niceties and the reason for the procedural nicety of the guidelines having a a methodology to proceed is to ensure that the fine is properly computed and that what I would call soft error is avoided those protocols were not avoided and that's why we have the problem and I would say most respectfully that it's supplemental appendix page 34 which is page 34 of the sentence minutes judge Seibel at line 17 specifically indicates that she's imposing an upward departure so it isn't departure but we have in the past made it clear that you know the use of wrong terminology is not dispositive and I'm not I'm not fighting that I'm not objecting to it most respectfully but what I'm saying is taking its on its face and in consideration of appellants sole request as the sentencing send it back to ensure that there is procedural compliance with the guidelines and the fop holding will resolve that issue that's my point there is not merely an ambiguity it's it's something more than is it tomato or you are correct that the court used the term interchangeably with variance requires the panel to engage in a pellet speculation I asked the court to reject speculation for the certainty that a remand can generate that's my respectful argument and I thank the court for its attention and time we will reserve decision